PEQUOT MANUFACTURING CORPORATION, Appellant, *v.*
THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES, Respondent.

(Argued January 15, 1930; decided February 11, 1930.)

*Alvin C. Cass* and *Arnold Gross* for appellant. The policies became automatically extended under option c at their face values for a shortened period because defendant failed to establish that insured's letter was a sufficient choice of another option. (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310.) The defendant's answer to the insured's letter constituted a temporary refusal to issue the new insurance until the happening of a stated contingency and defendant cannot be heard to say, after the loss had occurred, that it had unreservedly issued that insurance. (*Boutwell* v. *Globe & Rutgers Fire Ins. Co.*, 193 N. Y. 323; *Petterson* v. *Pattberg*, 248 N. Y. 86; *Lowell* v. *St. Louis Mutual Life Ins. Co.*, 111 U. S. 264; *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287.) The deferment clause resorted to by the defendant delayed and prevented the integration of a superseding contract of insurance; the insured's letter constituted nothing more than an application for superseding insurance, the granting of which the defendant could and did defer. (*Spencer* v. *Myers*, 150 N. Y. 269; *People* v. *Lacombe*, 99 N. Y. 43; *Matter of Folsom*, 56 N. Y. 60; *Surace* v. *Danna*, 248 N. Y. 18; *Petterson* v. *Pattberg*, 248 N. Y. 86; *Drury's Administrator* v. *New York Life Ins. Co.*, 115 Ky. 681.) The insured's letter was ambiguous as matter of law. (2 Williston on Contracts, p. 1277; *Schwartz* v. *Cahill*, 175 App. Div. 68; *Middleworth* v. *Ordway*, 191 N. Y. 404; *Surace* v. *Danna*, 248 N. Y. 18.) The court erred in granting defendant's motion for a directed verdict. (*Lamb* v. *Norcross*, 208 N. Y. 427; *Henry* v. *Talcott*, 175 N. Y. 385; *Hausman* v. *Buchman*, 189 App. Div. 597; *United States Rubber Co.* v. *Silverstein*, 229 N. Y. 168.)

*Peter C. Mann* and *James D. Ewing* for respondent. After the lapse of the policies, plaintiff and insured elected to take non-participating paid-up life insurance. (*Gately-Haire Co.* v. *Niagara Fire Ins. Co.*, 221 N. Y. 162; *Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608; *McCormick* v. *Travelers' Ins. Co.*, 215 Mo. App. 258.)

HUBBS, J. On April 21st, 1925, the defendant assurance society issued two policies of life insurance on the life of Samuel London. The policies were alike and will hereinafter be referred to as the policies. After the policies were issued, the plaintiff, a corporation, became the beneficiary thereof by proper indorsement thereon and also by written assignment executed after the lapse and surrender of the policies. Two premiums were paid, but the premiums which became due on April 14th, 1927, were not paid. The defendant duly extended the time for paying those premiums to June 14th, 1927. Those premiums were not paid and the policies thereby lapsed. On June 14th the insured and the plaintiff, the beneficiary, each wrote a letter to the defendant. The letters were identical in contents and read: " Will you please change the enclosed policies to paid up life insurance, and oblige." On June 17th, 1927, the defendant replied to the insured by letter which read: " We note from your letter of June 14th, that it is your intention to have the above mentioned policies converted into paid up life insurance contracts.

" In order to enable us to proceed with the transaction, may we ask you to kindly send us a statement as to whether or not the current dividends are to be included in the paid up transaction.

" Upon receipt of this information, the matter will be given prompt attention."

On July 11th, 1927, the insured died, without having answered the defendant's letter. Thereafter, on July 16th, 1927, the defendant indorsed the policies as paid-up non-participating life insurance.

The policies provide that after the payment of two full years' premiums upon any subsequent default in payment of premiums the insured, within three months after such default, may surrender the policies and elect one of the following options:

" (a) To receive the Cash Surrender Value of this policy; or

" (b) To purchase non-participating paid-up life insurance payable at the same time and on the same conditions as this policy; or

" (c) To continue the insurance for its face amount (and any outstanding dividend additions) as paid up extended term insurance for the period shown in the opposite Table, or for such further period as the dividend additions (if any) will purchase, but without future participation, or right to loans."

The policies provide for annual dividends and give the insured four options in regard to such dividends:

(1) Take them in cash;

(2) Apply them in payment of premiums;

(3) Use them to purchase paid-up additional insurance;

(4) Leave them to accumulate at interest.

If the insured fails to elect which option he desires to accept within three months after notice, the dividends are automatically applied to purchase paid-up additional insurance, specified by the terms of the policies.

The question for determination is whether the plaintiff is entitled to recover paid-up life insurance under option (b) or extended term insurance under option (c). If it is entitled to recover paid-up life insurance under option (b) it is entitled to $1,656. If it can recover under option (c) it is entitled to more than $22,000, as the insured died within the time of the extended term period if he had selected option (c).

The position of the plaintiff is that there was no effective election by the insured of which option (b) or(c), he chose to have applied, and, therefore, that option (c) for paid-up

extended term insurance for the face of the policies automatically applied under the terms of the policies and under section 88 of the Insurance Law (Cons. Laws, ch. 28). The policies provide: " In the event of default in the payment of any premium or installment thereof  *  *  * if the insured (or assignee, if any) does not select one of said options (a, b or c) within three months of such default, the insurance shall be continued as provided under option (c)." Such position is based upon the contention that the insured's letter of June 14th, 1927, to the defendant, " Will you please change the enclosed policies to paid-up life insurance, and oblige," is ambiguous and may be understood as applying to either option (b) or (c); or at least that it does not make an effective election of option (b) and, therefore, option (c) automatically applies; also that said letter did not constitute an election because it did not direct what disposition should be made of the current dividends, whether to be taken in cash by the insured under option (1), to be used to purchase paid-up additional insurance under option (2), paid-up extended term insurance under option (3) or left on interest under option (4). It is also urged that the provision of the policies granting the defendant the right to defer action for ninety days, on an application for " the granting of any surrender value " is applicable, and that defendant's letter to the insured under date of June 17th, asking for instructions as to the application of accrued dividends establishes that the defendant, under that provision of the policy, had deferred action on the insured's request to have the policies changed to paid-up life insurance, and that it did not take action thereon prior to the insured's death, and, therefore, that there had been no effective election by the insured which had been accepted by the defendant and option (c) for paid-up extended term insurance must apply. The deferment clause of the policies reads: " Payment of Surrender Value. The granting of any

surrender value under this policy may be deferred by the Society for a period not exceeding ninety days after receipt of application therefor."

The argument of the appellant proceeds upon the theory that the defendant was required to take some affirmative action after receipt of the letter of June 14th requesting that the policy be changed to paid-up life insurance.

The right granted by the terms of the policies to the insured upon the lapsing of the policies to select one of the three options is in the nature of a continuing binding provision, a vital part of the contracts, required as to options (b) and (c) by section 88 of the Insurance Law. It is self-operating in so far as the defendant is concerned. When the insured communicated his election of the option which he desired to take, that part of the contract was closed. The defendant was not required to do anything. The policies automatically became paid-up life insurance policies for the amount specified in the table contained in the policies, which states the amount of paid-up insurance which the policies represent at the date when they lapse. (*Gately-Haire Co., Inc.*, v. *Niagara Fire Ins. Co.*, 221 N. Y. 162.) Whatever entries the defendant made upon its books or upon the policies were simply evidences of the transaction, part of the machinery used in doing the business, and did not and could not affect the legal rights and obligations of the parties. Those rights and obligations were definitely fixed by the terms of the contracts.

The deferment clause of the policies had no application for there was nothing to be deferred. That part of the contracts was closed. If, however, the assured had accepted option (a), " to receive the cash surrender value of this policy," the defendant would have had the right, if it so elected, to defer the payment of such cash surrender value for a period of ninety days. The selection of the option desired would have been immediately effective

upon notice to the defendant, but the defendant would have had the right under the deferment clause to refrain from paying the amount of such cash surrender value as fixed by the table of payments contained in the policies for a period of ninety days.

Insured's letter of June 14th to the defendant inclosed the policies and said, " Will you please change the enclosed policies to paid-up life insurance, and oblige." The words of the letter are those used in option (b), " paid-up life insurance," and have a well-understood, definite meaning. In *McQuitty* v. *Continental Life Ins. Co.* (15 R. I. 573) it is said a paid-up insurance policy is one " reduced to an amount corresponding to the premiums paid, so that no further premiums are required."

In *Nichols* v. *Mutual Life Ins. Co.* (176 Mo. 355) the statute under consideration provided that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual premiums thereon, but in all instances where three annual premiums shall have been paid on the policy of insurance a holder of such policy shall be entitled to paid-up insurance. The court held that the term " paid-up insurance " meant insurance for life, fully paid-up, and not paid-up temporary insurance.

It is difficult to see how there can be ambiguity in the language used. The insured had permitted the policies to lapse. There were three valuable options under the policies. He had a right to choose one. Certainly he did not intend to choose option (a), to take the cash surrender value of the policies. Option (c) permitted him to continue the insurance for its face amount as paid-up extended term insurance for the period specified in the table printed in the policies. The letter did not ask for extended term insurance, which is entirely different than paid-up life insurance. Extended term insurance is for the face of the policy for such a term as the reserve apportioned to the policy will purchase, as shown by the

table printed in the policy. When the term expires all rights under the policy are at an end. The term insurance which the insured would have been entitled to when the policies lapsed, after applying accrued dividends, would have been approximately twenty months. The amount of paid-up insurance was $1,656.

The letter of June 14th, asking for paid-up life insurance, is unambiguous and constituted a definite election of option (b) and cannot, under the facts in this case, be changed after the insured's death.

In addition to the cash surrender value, paid-up insurance, and extended term insurance options, based upon the reserve apportioned to the policy, from which the assured had a right to select, he also was entitled to a sum apportioned to the policies as current dividends. Having elected to take option (b), paid-up life insurance, he could not elect to have such current dividends used to purchase extended term insurance. He could either take such current dividends in cash, use the amount to purchase additional paid-up insurance, or leave the dividends on interest. His letter of June 14th did not specify how he desired to use the current dividends. Defendant's letter of June 17th was simply a request to be advised as to what he wished to have done with the current dividends. It in no way affected insured's selection of option (b) as the option which he desired to have applied. As the insured did not advise the defendant about the application of current dividends, it applied them to the purchase of paid-up insurance, thereby increasing the amount payable to the beneficiary over the amount which it would have received if the current dividends had been paid in cash.

The trial court was right in directing judgment in favor of the plaintiff for the amount of paid-up life insurance. The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment affirmed.