DOROTHY F. L. JONES, Respondent, *v.* THE UNION CENTRAL LIFE INSURANCE COMPANY, Appellant.

Fourth Department, January 6, 1943.

*James F. Hubbell* for appellant.

*Moses G. Hubbard, Jr.,* for respondent.

CUNNINGHAM, J. This action is brought by the plaintiff to recover the face value of a life insurance policy No. 1214142, in which she is named as beneficiary.

A summary judgment has been granted in favor of the plaintiff, the affidavits showing that the facts are not in dispute.

The policy was issued by defendant on August 24, 1934, to plaintiff's husband, Ray D. Jones, insuring his life for the sum of $5,000. Mr. Jones died on February 6, 1941.

The Charles B. Knight Agency, Inc., of New York city, is the general manager of the defendant for the State of New York. Harry P. Layton, through whom the insured secured the policy, represents this agency in the City of Utica. Layton did not have and never did have any general authority to vary, change or modify the provisions or terms of any policy issued by the defendant.

The insured defaulted in the payment of the premium due on this policy in November, 1940, and it is claimed by the plaintiff that thereupon, under its terms, it became an extended term policy, for two and a half years, in the amount of $5,000. The defendant, on the other hand, claims that through negotiations between agents of defendant and the insured before the latter's death, the policy had been converted into a paid-up policy of about $900. This is the dispute between the parties in this case.

The policy contains the following provisions: "Agents are not authorized to grant permits, make or alter contracts, or waive forfeitures."

"None of the terms of this policy shall be modified, nor any forfeiture under it waived, save by an agreement in writing, signed by the President, a Vice-President, the Secretary or an Assistant Secretary, whose authority for this purpose shall not be delegated."

The policy also provides that upon the non-payment of a premium, the cash surrender value of the policy may be used in one of several ways. Option 1 provides for the conversion of the policy into one of extended term insurance for a limited period, for the full face value of $5,000. Option 2 provides that the cash surrender value may be applied to the purchase of nonparticipating paid-up whole life insurance, upon the written request of the insured and upon the surrender of the policy "*before the expiration of the days of grace.*" The insured did not accept Option 2 or any other option before the termination of the days of grace.

Another provision of the policy is as follows: "If, on failure to pay a premium, no option is exercised, such value shall be

applied as provided in Option 1." Therefore, after the expiration of the days of grace, the policy in suit automatically became a paid-up policy for the face value thereof, for an extended term of about two and a half years.

During the latter part of December, 1940, the insured told Layton that he could not pay the premium on this policy and wished to convert it to paid-up insurance. Layton suggested that the insured give a premium note for the amount of the unpaid premium and that he request the company to reinstate the policy. He also stated that this would give the insured more time in which to decide what course he would follow.

The days of grace expired about December 26, 1940, and at that time Jones had not exercised any option. Thereupon, Layton told the insured that the policy had converted itself into one for an extended term for $5,000. The policy provides that this extended term could not be changed or altered, except " by an agreement in writing " signed by the president or other official of the company.

On January 8, 1941, Jones signed a letter requesting that the policy be converted to paid-up insurance, and also signed a premium note for the reinstatement of the policy, both of which he gave to Layton who sent them to the Knight Agency. On January 18, 1941, the Knight Agency mailed to Layton a letter enclosing a form marked " APPLICATION FOR PAID-UP INSURANCE," which reads: " Application is hereby made to The Union Central Life Insurance Company for paid-up participating insurance of $906.00 under Policy No. 1214142   *   *   *.

" I request proper endorsement of said policy.

" I hereby certify that I have not been declared a bankrupt and that no proceedings to declare me a bankrupt are pending, and that there has been no assignment of said policy."

This application was dated January 31, 1941, and signed by the insured. In the letter the Knight Agency requested Layton to endeavor to persuade the insured to have the policy reinstated, and said that if the insured did not desire the reinstatement, then Layton should ask him to sign the application for paid-up insurance and return the application to the Knight Agency, together with the policy " for endorsement " thereon of the change to paid-up life. Layton enclosed the application in a letter to the insured under date of January 20, 1941, but suggested therein that the insured have the policy reinstated. The insured signed the application for paid-up insurance and mailed it to Layton, who received it on February 3, 1941, and mailed it on the same day to the Knight Agency. The insured

delivered the policy to Layton on January 30, 1941, but the time at which that policy was delivered to defendant does not appear in the record. However, under date of February 11, 1941, the company endorsed on the policy the change thereof to paid-up insurance. It is well to note that this endorsement on the policy was signed by the secretary of the company, this being a recognition by the company that it was understood by it that Option No. 2 could not be exercised by the insured after the expiration of the days of grace, except with the permission of the company, in writing.

That the application for paid-up insurance was not considered to be an acceptance of an offer of paid-up insurance is shown by the fact that the Knight Agency's letter to Layton stated that they wished him to do everything that he could to have the policy continued in force " at least to the February, 1941 anniversary," and asked Layton to advise them if they were to use the premium note and continue the policy in force. The insured died on February 6, 1941. The company recognized that it was required to accept the application of the insured in the manner provided in the policy, and on February 11, 1941, it endorsed on the insurance policy its acceptance, signed by the secretary of the company, reading: " In consideration of the application for paid-up insurance hereunder, this policy is changed to a Paid-up Participating Life Policy for Nine Hundred Forty-five ($945) Dollars."

The acceptance by the company was made after the death of the insured. The rights of the insurer and the beneficiary of the insured became fixed by the death of the insured, as such rights existed at that time, and, therefore, the extended insurance in force could not be thereafter changed by the insurer. (*Lange* v. *Metropolitan Life Insurance Co.*, 252 App. Div. 696, 700, affd., 278 N. Y. 626.)

The application by the insured for extended insurance was nothing more than an offer of the insured to make a contract to that effect, and such offer could have been revoked at any time before acceptance. (*Petterson* v. *Pattberg*, 248 N. Y. 86; *Cochran* v. *Taylor*, 273 N. Y. 172.)

It is the rule that a revocable offer is revoked by the death of the person making the offer. (*Twenty-third Street Baptist Church* v. *Cornell*, 117 N. Y. 601; 1 Williston on Contracts [Rev. ed.], § 62; 1 Restatement of the Law of Contracts, p. 56, § 48; 17 C. J. S., p. 400, § 51, subd. c.)

The appellant relies upon the case of *Lofaro* v. *John Hancock Mutual Life Ins. Co.* (239 App. Div. 54, affd., 272 N. Y. 627).

In that case it appears that before his death the insured had requested the company to cancel the double indemnity provision of the policy issued to him. In the opinion it was said: " As defendant's consent is not a prerequisite to the revocation of this part of the policy, no formal cancellation or physical defacement or rewriting of the policy is required; all that is necessary is an unequivocal and absolute request on the part of the insured for a discontinuance of the double indemnity benefit, and a surrender of the policy to the company for cancellation."

But in the case at bar the consent of the company is a " prerequisite " to the change of the policy to paid-up life insurance. This is so because the right of the insured to demand that the policy be changed to paid-up life insurance had terminated by his failure to exercise such right before the expiration of the days of grace.

In *Pequot Mfg. Corp.* v. *Equitable L. A. Society* (253 N. Y. 116), it appears that the policy of insurance provided that in the event of default in the payment of any premium, the insured might within three months thereafter elect to take paid-up life insurance or to continue the insurance for its face amount for a limited period as paid-up extended term insurance. The insured during his lifetime and within three months of the default elected to take paid-up life insurance, and it was held that such election having been made within the required time of three months, was effective and was not cancelled by the subsequent death of the insured.

That case is distinguished from the one in suit herein by the fact that in the case at bar the insured did not elect any option during the time within which, under the terms of the policy, he was permitted to make such election, while in the cited case the election was made during the three months' time allowed by the policy.

The judgment should be affirmed, with costs.

DOWLING, J. (dissenting). The policy contained the following endorsement: " Avoid unnecessary expense by communicating with the Company or its Agent relative to any settlement under this policy." Pursuant to this invitation, the insured conferred at Utica, N. Y., with the defendant's general agent for New York State on January 8, 1941, relative to converting his policy into paid-up insurance for life. The insured and one Layton, representing that agency, prepared the following letter:

                                    " January 8, 1941

Union Central Life Insurance Company,
    Cincinnati, Ohio
Gentlemen:
    Please be advised that I hereby elect that the value of my
policy #1,214,142 shall be applied to paid-up insurance for life,
under Option 2, Section C, as of the date of lapse of said policy
for quarterly premium payable November 24, 1940.
                        Respectfully submitted,
                                    RAY D. JONES "
and Layton mailed it to the main office of the agency in New
York and the general agent forwarded the letter to the home
office of the company. On January 15, 1941, the defendant wrote
to its general New York agent offering to allow the insured to
elect to have the value of the policy used for paid-up insurance
" if he would sign the application enclosed with the letter to
have the value so used and deliver to the defendant said signed
application in duplicate and said policy." On January 20,
1941, Layton wrote to the insured notifying him of the com-
pany's offer and enclosing the application forms for the insured
to execute. On January 30, 1941, the insured delivered the
policy to Layton and on February 3, 1941, he delivered the
applications to Layton with his signature thereon. Layton for-
warded the applications and the policy to the New York office of
the general agent and the general agent forwarded said docu-
ments to the home office of the defendant. Before the defendant
had actually endorsed the change to paid-up life insurance on
the policy the insured had died. In defense of the motion, the
defendant established that the insured's application for paid-up
insurance was granted and accepted by the defendant on condi-
tion that the insured sign the printed applications and return
them with the policy to the defendant company. The insured
accepted the company's offer, signed the applications and
delivered them with the policy to the company's general agent
as directed by the policy. So far as the plaintiff was concerned
the transaction had been completed and closed. If the endorse-
ment had never been made on the policy, the insured would have
been entitled to his paid-up policy and his beneficiary could have
maintained an action to enforce payment thereon. The transac-
tion was completed before the death of the insured. The endors-
ing of the transaction on the policy was, under the circumstances,
a mere detail for the regularity of the defendant's records. The
fact that the endorsement was made on the policy after the
insured's death is of no significance. (*Pequot Mfg. Corp.* v.
*Equitable L. A. Society,* 253 N. Y. 116, 120.)

All concur with CUNNINGHAM, J., except DOWLING, J., who dissents and votes for modification by reducing the recovery to $945, the amount of the paid-up insurance, in an opinion. Present — CUNNINGHAM, TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Judgment and order affirmed, with costs.